1

2

3

4

5                                                                              JS-6

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11

UNITED STATES OF AMERICA,              Case No. 2:20-cv-6692-JFW (PDx)

12

13            Plaintiff,

14                                              **STIPULATED ORDER FOR**

15       v.                                     **PERMANENT INJUNCTION**

16                                              **AND EQUITABLE MONETARY**

17 MYLIFE.COM, INC., a corporation,             **RELIEF**

18

19       and

20

21

22 JEFFREY TINSLEY, individually and as

23 an officer of MYLIFE.COM, INC.,

24

25            Defendants.

26

27

28

Plaintiff and the Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Equitable Monetary Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in violation of ROSCA, 15 U.S.C. § 8404, and in violation of the FCRA, 15 U.S.C. §§ 1681-1681x, in the promotion and sale of background reports.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in their answer to the Complaint.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

B.     "**Covered Information**" means individually identifiable information from or about an individual consumer, including: (1) first and last name; (2) a physical address; (3) an email address or other online contact information, such as an instant messaging user identifier or a screen name; (4) a telephone number; (5) a persistent identifier, such as a customer number held in a "cookie," a static Internet Protocol ("IP") address, a mobile device ID, or processor serial number; (6) date of birth; (7) real property information; (8) corporate affiliations and professional licenses; (9) photos and videos; (10) work history; (11) sex offender status; (12) arrest records; (13) bankruptcy records; (14) liens; (15) eviction records; (16) civil and criminal court record information; (17) traffic tickets or citations; and (18) any information combined with any of (1) through (17) above.

C.     "**Consumer Report**" means any written, oral, or other communication

of any information by a Consumer Reporting Agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for a Permissible Purpose.

D.     "**Consumer Reporting Agency**" means any Person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.

E.     "**Covered Business**" means:  (1) Corporate Defendant; (2) any business that Corporate Defendant, individually or collectively with Individual Defendant, is a majority owner or controls, directly or indirectly; and (3) any business that Individual Defendant, individually or collectively with Corporate Defendant, is a majority owner or controls directly or indirectly.

F.     "**Covered Record**" means any written or oral communication that includes any of the following information from or about an individual consumer: (1) sex offender status; (2) arrest records; (3) bankruptcy records; (4) liens; (5) eviction records; (6) civil and criminal court record information; and (7) traffic tickets or citations.

G.     "**Defendants**" means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

1.     "**Corporate Defendant**" means MyLife.com, Inc., and its successors and assigns.

2.     "**Individual Defendant**" means Jeffrey Tinsley.

H.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any product or service, a provision under which the consumer's silence or failure to take affirmative action to reject a product or service or to cancel the

agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

I.     "**Person**" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

J.     "**Permissible Purpose**" means:

1.     In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury; or

2.     In accordance with the written instructions of the consumer to whom it relates; or

3.     To a person which the Consumer Reporting Agency has reason to believe:

a.     intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

b.     intends to use the information for employment purposes; or

c.     intends to use the information in connection with the underwriting of insurance involving the consumer; or

d.     intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

e.     intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

f.     otherwise has a legitimate business need for the

information:

i.    in connection with a business transaction that is initiated by the consumer; or

ii.    to review an account to determine whether the consumer continues to meet the terms of the account; or

g.    executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards; or

4.    In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency), if the person making the request certifies to the Consumer Reporting Agency that:

a.    the Consumer Report is needed for the purpose of establishing an individual's capacity to make child support payments, determining the appropriate level of such payments, or enforcing a child support order, award, agreement, or judgment;

b.    the parentage of the consumer for the child to which the obligation relates has been established or acknowledged by the consumer in accordance with State laws under which the obligation arises (if required by those laws); and

c.    the Consumer Report will be kept confidential, will be used solely for a purpose described in Definition J.4.a, and will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose; or

5.    To an agency administering a State plan under Section 454 of the Social Security Act (42 U.S.C. § 654) for use to set an initial or modified child support award; or

6.    To the Federal Deposit Insurance Corporation or the National Credit Union Administration as part of its preparation for its appointment or as part of

1  its exercise of powers, as conservator, receiver, or liquidating agent for an insured
2  depository institution or insured credit union under the Federal Deposit Insurance Act
3  or the Federal Credit Union Act, or other applicable Federal or State law, or in
4  connection with the resolution or liquidation of a failed or failing insured depository
5  institution or insured credit union, as applicable.

6                                              **ORDER**
7              **I.      PROHIBITED BUSINESS ACTIVITIES**
8                         **(FAIR CREDIT REPORTING ACT)**

9         IT IS ORDERED that Defendants, their officers, agents, employees, and
10  attorneys, and all other Persons in active concert or participation with any of them,
11  who receive actual notice of this Order, whether acting directly or indirectly, in
12  connection with operating as a Consumer Reporting Agency, are hereby permanently
13  restrained and enjoined from:

14         A.      Failing to maintain reasonable procedures designed to limit the
15  furnishing of Consumer Reports to Persons with Permissible Purposes to receive
16  them.  Such reasonable procedures shall require that: (1) prospective users of the
17  information identify themselves, certify the purposes for which the information is
18  sought, and certify that the information will be used for no other purpose; and that (2)
19  Defendants make a reasonable effort to verify the identity of a new prospective user
20  and the uses certified by such prospective user prior to furnishing such user a
21  Consumer Report;

22         B.      Failing to maintain reasonable procedures to assure the maximum
23  possible accuracy of the information concerning the individual about whom the report
24  relates;

25         C.      Failing to provide a notice to users (Attached hereto as Attachment A to
26  this Order) of such Person's responsibilities under the FCRA; and

27         D.      Furnishing a Consumer Report to any Person whom Defendants do not
28  have reason to believe has a Permissible Purpose to receive the Consumer Report.

## II.   FAIR CREDIT REPORTING ACT MONITORING PROGRAM

IT IS FURTHER ORDERED that each Covered Business must not advertise, market, promote, or offer for sale any Covered Information unless it first establishes and implements, and thereafter maintains, a comprehensive monitoring program to regularly review, assess, and determine the applicability of the FCRA to the business practices of the Covered Business, and if the FCRA applies to those business practices, to regularly review, assess, and determine whether they comply with the requirements of the FCRA as required by the statute and Section I of this Order (hereinafter, the "Monitoring Program").  To satisfy this requirement, each Covered Business must, at a minimum:

A.   Document in writing the content, implementation, and maintenance of the Monitoring Program;

B.   Designate a qualified employee or employees to coordinate and be responsible for the Monitoring Program;

C.   Assess and document, prior to the inception of the Monitoring Program and at least once every twelve (12) months thereafter, whether the Covered Information promoted or offered for sale by the Covered Business is a Consumer Report, and whether the Covered Business is acting as a Consumer Reporting Agency. Such assessment shall include, at a minimum, a review of:

1.   All products and services offered or sold;

2.   Marketing and advertising materials used to offer or sell those products and services (including but not limited to any advertisements, blog posts, testimonials, published statements, customer service scripts, and any method or device used to direct Persons to a website);

3.   Any measures to prevent users from using a Covered Business' products or services for purposes governed by the FCRA (*e.g.*, disclaimers, certifications, account terminations, blocking); and

4.   Any information about how users of those products or services use,

intend to use, or expect to use those products or services (including but not limited to consumer correspondence, consumer complaints, and consumer testimonials);

D.     Design, implement, maintain, and document safeguards to assure FCRA compliance.  Such safeguards must include, at a minimum:

1.     Training of all officers, employees, agents, and independent contractors, at onboarding and at least every twelve (12) months thereafter, on the FCRA's legal requirements and activities that would violate those requirements;

2.     Refraining from advertising, marketing, promoting, describing, or offering for sale any product or service that involves Covered Information as suitable or appropriate for any Permissible Purpose, unless the requirements of the FCRA and this Order that would apply to a Consumer Report are satisfied as to that product or service;

3.     Prepublication review of all marketing and advertising materials used to offer or sell those products and services (including but not limited to any advertisements, blog posts, testimonials, published statements, customer service scripts, and any method or device used to direct Persons to a website);

4.     Clearly and Conspicuously disclosing permissible and impermissible uses of any Covered Information under the FCRA and this Order prior to providing or disclosing such information;

5.     Procedures to onboard users, including requiring users to agree to contracts or terms and conditions governing FCRA compliance and Clear and Conspicuous disclosure of such terms and conditions;

6.     User access controls, such as controls on the number of Covered Records obtained per day; and

7.     Ongoing reviews, tests, or audits of the ways that users use or expect to use that Covered Business' products or services;

E.     Evaluate and adjust the Monitoring Program in light of any changes to the business' operations or business arrangements, or any other circumstance that the

1 business knows or has reason to know may materially affect the Monitoring Program's
2 effectiveness.  At a minimum, each Covered Business must evaluate the Monitoring
3 Program every twelve (12) months and implement modifications based on the results;
4 and

5      F.    At least once every twelve (12) months, provide (1) the written program
6 required by Subsection II.A and any evaluations thereof or updates thereto, and (2) the
7 assessments and documentation required by Subsection II.C to the Covered Business's
8 board of directors or governing body or, if no such board or equivalent governing body
9 exists, to a senior officer responsible for regulatory compliance.

10 **III.   PROHIBITION AGAINST MISREPRESENTATIONS TO**
11 **CONSUMERS**

12     IT IS FURTHER ORDERED that Defendants, their officers, agents,
13 employees, and attorneys, and all other Persons in active concert or participation with
14 any of them, who receive actual notice of this Order, whether acting directly or
15 indirectly, in connection with advertising, marketing, promoting, or offering any
16 product or service, are permanently restrained and enjoined from misrepresenting,
17 expressly or by implication:

18      A.    What a user can do or achieve with the service;

19      B.    Payment, renewal, cancellation, or refund terms relating to the product
20 or service;

21      C.    Policies or practices regarding payments, renewals, cancellation, or
22 refunds;

23      D.    The extent to which, or the probability that any consumer may have
24 Covered Records; and

25      E.    Any other fact that is material to users concerning Covered Records or
26 any of the information therein, such as any material aspect of their accuracy, nature,
27 or characteristics; or any material restrictions, limitations, or conditions on users'
28 ability to access, alter, use, correct, or delete them.

## IV.   PROHIBITION AGAINST UNSUBSTANTIATED RESPRESENTATIONS REGARDING COVERED RECORDS

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering any product or service, are permanently restrained and enjoined from stating, directly or by implication, that:

A.   A consumer may have or does have Covered Records;

B.   Defendants have found Covered Records; or

C.   There are possible or probable Covered Records;

unless the representation is non-misleading, and, at the time of making such representation, Defendants have found a Covered Record about that consumer from a third-party source.

## V.   PROHIBITION AGAINST STATEMENTS REGARDING TRAFFIC TICKETS

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering any product or service, are permanently restrained and enjoined from stating, directly or by implication, that a traffic ticket or a traffic citation is a criminal or arrest record. Provided, however, that this provision does not preclude Defendants from stating that they received information from a third-party on a specific date that indicates that court records may exist relating to the subject of the search.

## VI.   BAN ON NEGATIVE OPTIONS

IT IS FURTHER ORDERED that Defendants, whether directly or through an intermediary, are permanently restrained and enjoined from advertising, marketing,

promoting, or offering for sale any product or service with a Negative Option Feature.

## VII.   MONETARY JUDGMENTS AND PARTIAL SUSPENSIONS

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of Twenty-Eight Million Nine Hundred Forty-Five, Nine Hundred Sixty-Eight Dollars ($28,945,968) is entered in favor of the Plaintiff against Corporate Defendant, as monetary relief.

B.     Judgment in the amount of Five Million Dollars ($5,000,000) is entered in favor of the Plaintiff against Individual Defendant, as monetary relief.

C.     Corporate Defendant is ordered to pay to Plaintiff, by making total payment to the Treasurer of the United States, Sixteen Million Dollars ($16,000,000), as follows:

1.     Corporate Defendant must pay Two Million Dollars ($2,000,000) to Plaintiff on or before January 15, 2022.

2.     Corporate Defendant must pay two (2) additional discrete payments of One Million, One Hundred Sixty-Six Thousand, One Hundred and Sixty-Six Dollars and sixty-six cents ($1,166,666.66) each, on or before each of the following dates:

a.     June 30, 2022; and

b.     September 30, 2022;

3.     Corporate Defendant must pay one One (1) additional discrete payment of One Million, One Hundred Sixty-Six Thousand, One Hundred and Sixty-Six Dollars and sixty-eight cents ($1,166,666.68), on or before December 31, 2022;

4.     Corporate Defendant must pay twelve (12) additional discrete payments of Eight Hundred and Seventy-Five Thousand Dollars ($875,000) each, on or before each of the following dates:

a.     March 31, 2023;

b.     June 30, 2023;

c.      September 30, 2023;

d.      December 31, 2023;

e.      March 31, 2024;

f.      June 30, 2024;

g.      September 30, 2024;

h.      December 31, 2024;

i.      March 31, 2025;

j.      June 30, 2025;

k.      September 30, 2025; and

l.      December 31, 2025.

5.      All such payments must be made by electric fund transfer in accordance with instructions provided by a representative of the Plaintiff.  Written confirmation of each wire transfer shall be delivered via email to Zachary A. Dietert, Trial Attorney, Consumer Protection Branch, U.S. Department of Justice, 450 5th Street, N.W. Suite 6400-South, Washington, DC 20530, Zachary.A.Dietert @usdoj.gov.  The wire transfer transmittal shall include the title of this litigation and a reference to DJ #102-4025.

6.      Upon such total payments, the remainder of the Corporate Defendant's judgment is suspended, subject to Subsection VII.J below.

7.      Corporate Defendant may prepay at any time, and without penalty, the remaining balance, or any part thereof, of the Sixteen Million Dollars ($16,000,000) owed under this Order.  Any such prepayment made prior to an installment due date shall be credited as if made on the next installment due date, and Corporate Defendant shall be relieved of making any further payments on the installment due date for any prepayments to the extent of such prepayment.  Nothing herein shall be construed to relieve Corporate Defendant of its obligation to make timely payment for any installments as they become due, which have not otherwise fully been paid in advance.

8.      Until such time that the total amount of Sixteen Million Dollars ($16,000,000) is paid in full, Corporate Defendant is prohibited from paying any dividends to any shareholders and is prohibited from increasing the salary or paying bonuses or other form of financial compensation to any of Corporate Defendant's employees who were paid or to be paid an annual salary of $100,000.00 or more for the years 2016 to the present, other than through annual Cost-of-Living Adjustments at the rate approved by the Social Security Administration.

D.      Individual Defendant is ordered to pay to Plaintiff, by making total payment to the Treasurer of the United States, Five Million Dollars ($5,000,000), as follows:

1.      Individual Defendant shall pay Three Hundred Thousand Dollars ($300,000) to Plaintiff no later than December 15, 2021.

2.      Individual Defendant shall pay sixteen (16) additional discrete payments of Two Hundred Ninety-Three Thousand, Seven Hundred and Fifty Dollars ($293,750) each, on or before each of the following dates:

a.      March 31, 2022;

b.      June 30, 2022;

c.      September 30, 2022;

d.      December 31, 2022;

e.      March 31, 2023;

f.      June 30, 2023;

g.      September 30, 2023;

h.      December 31, 2023;

i.      March 31, 2024;

j.      June 30, 2024;

k.      September 30, 2024;

l.      December 31, 2024;

m.      March 31, 2025;

n. June 30, 2025;

o. September 30, 2025; and

p. December 31, 2025.

3. All such payments must be made by electric fund transfer in accordance with instructions provided by a representative of the Plaintiff. Written confirmation of each wire transfer shall be delivered via email to Zachary A. Dietert, Trial Attorney, Consumer Protection Branch, U.S. Department of Justice, 450 5th Street, N.W. Suite 6400-South, Washington, DC 20530, Zachary.A.Dietert @usdoj.gov. The wire transfer transmittal shall include the title of this litigation and a reference to DJ #102-4025.

4. To secure the payment obligation under Subsection VII.D.2, above, Individual Defendant grants the Plaintiff a security interest in certain property located at 85 Crestview Ave, Camarillo, CA 93010, and proceeds thereof (hereinafter, the "Collateral"), as set forth in the Deed of Trust attached hereto as Attachment B (hereinafter, "Deed"). Individual Defendant shall do all things necessary to implement and comply with its obligations in this Order. Individual Defendant represents and acknowledges that the Plaintiff is relying on the material representations that Individual Defendant is the sole owner in fee simple of the Collateral, that title to the Collateral is marketable, and that the Collateral currently is not encumbered by any other lien, mortgage, deed of trust, assignment, pledge, security interest, or other interest except as previously disclosed to the Commission. Individual Defendant represents that none of the encumbrances on the Collateral is in default.

5. Individual Defendant further agrees that, as of the date on which they sign this Order, they shall refrain from transferring, converting, encumbering (including encumbering by failing to pay any taxes or assessments), selling, assigning, or otherwise disposing of the Collateral, except with the express prior written permission of counsel for the Plaintiff and for the purpose of satisfying Individual

Defendant's obligation in Subsections VII.D.1-2, above, and the proceeds of any such transaction shall be paid at settlement to the Plaintiff, ***provided, however,*** that this limitation shall end with the completion of all payments listed in Subsections VII.D.1-2, above.

6.      Individual Defendant hereby releases and waives any statutory, common law, or other homestead exemption that may apply to the Collateral for purposes of the security interest granted to the Plaintiff, ***provided, however,*** that this release and waiver shall end with the completion of all payments listed in Subsections VII.D.1-2, above.

7.      Individual Defendant shall cooperate fully with the Plaintiff and be responsible for preparing, executing, and recording the necessary documents and doing whatever else is reasonably necessary or desirable to perfect, evidence, and effectuate the Plaintiff's liens, security interests, and other protections granted herein. Individual Defendant shall submit to the clerk's office for recording all security documents used to perfect the Plaintiff's lien on the Collateral within fourteen (14) days after entry of this Order, and shall deliver to the Plaintiff copies of such officially recorded documents and a statement showing the outstanding balance owed on any preexisting security deeds as of the date of entry of this Order within seven (7) days after receipt of such documents.

8.      Individual Defendant may prepay at any time, and without penalty, the remaining balance, or any part thereof, of the $5 million ($5,000,000.00) owed under this Order.  Any such prepayment made prior to an installment due date shall be credited as if made on the next installment due date, and Individual Defendant shall be relieved of making any further payments on the installment due date for any prepayments to the extent of such prepayment.  Nothing herein shall be construed to relieve Individual Defendant of its obligation to make timely payment for any installments as they become due, which have not otherwise fully been paid in advance.

9.      Until such time that the total amount of Sixteen Million Dollars

($16,000,000) is paid by Corporate Defendant in full, Individual Defendant is prohibited from receiving any dividends from Corporate Defendant.

E.    In the event that Individual Defendant fails to make the required payments when due under Subsections VII.D.1-2 of this Order, or the Plaintiff is not allowed to retain any such payment, or if Individual Defendant fails to comply with any part of Section VII.D of this Order and such failure is not timely cured within five (5) business days:

1.    The entire judgment amount in Subsection VII.B, less any amount previously paid, shall immediately become due and payable by Individual Defendant. Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance.  Time is of the essence for the payments specified in this Section; and

2.    The Individual Defendant consents to the appointment of a receiver by the Court for purpose of taking possession and control of and liquidating the Collateral, with the rights and powers, and privileges of an equity receiver.  The costs and expenses of the receivership, including reasonable compensation for the receiver and personnel retained by the receiver, shall be paid solely from the proceeds of the Collateral.  The Plaintiff and Individual Defendant waive the requirements of 28 U.S.C. § 2001 and 28 U.S.C. § 2004 in connection with any pending or contemplated sale by the receiver.

F.    Upon full payment of their obligations under Subsection VII.D.2 of this Order and a subsequent written request by Individual Defendant, the Plaintiff agrees to reconvey or release the Deed within a reasonable time.  Individual Defendant shall prepare and provide to the Plaintiff any documents required to reconvey or release the Deed, and shall be responsible for recording the necessary documents and doing whatever else is reasonably necessary or desirable to perfect, evidence, and effectuate the Plaintiff's reconveyance or release, and shall pay all of the fees and costs related to such reconveyance or release, including filing fees. In addition, the

1  Plaintiff shall promptly cancel the Deed to the extent necessary to facilitate the sale
2  or encumbrance of the Collateral if the funds owed to the Plaintiff pursuant to
3  Subsections VII.D.1-2 of this Order are remitted directly to the Plaintiff from the
4  proceeds of such sale or encumbrance immediately upon closing of such sale or
5  encumbrance.

6      G.    If, upon motion of the Plaintiff, a Court determines that Individual
7  Defendant made a material misrepresentation or omitted material information
8  concerning ownership or authority to pledge the Collateral, any encumbrance of the
9  Collateral, or the value of the Collateral, the entire Judgment amount in Subsection
10 VII.B, above (which the Individual Defendant stipulates only for purposes of this
11 Section represents the consumer injury alleged in the Complaint), less any amounts
12 previously paid by Individual Defendant, shall immediately become due and payable
13 by him. Interest computed at the rate prescribed under 28 U.S.C. § 1961, as
14 amended, shall immediately begin to accrue on the unpaid balance.

15     ***Provided*** that proceedings instituted under this provision would be in addition
16 to, and not in lieu of, any other remedies, as may be provided by law, including but
17 not limited to, contempt proceedings or any other proceedings that the Commission
18 may initiate to enforce this Order.

19     H.    The Commission's and Plaintiff's agreement to this Order is expressly
20 based on the material representations that Individual Defendant has the right and
21 authority to enter into the Deed, and that such Collateral is not encumbered by any
22 lien, assignment, security interest, or other interest not otherwise disclosed in the
23 Deed or Financial Disclosures previously made to the Commission.

24     I.    The Commission's and Plaintiff's agreement to the installment plans
25 described above in Subsections VII.C and VII.D and the suspension of part of
26 Corporate Defendant's judgment is expressly premised upon the truthfulness,
27 accuracy, and completeness of Defendants' sworn financial statements and related
28

documents (collectively, "financial representations" ) submitted to the Commission, namely:

1.     The Financial Statement of Corporate Defendant signed on October 24, 2019, including the attachments;

2.     The additional information and documentation submitted by secure file transfer protocol from Corporate Defendants' counsel at DLA Piper to Commission counsel dated October 31, 2019 and November 14, 2019, attaching additional financial records and supplements to Corporate Defendant's Financial Statement listed above;

3.     The Financial Statement of Individual Defendant signed on January 17, 2020, including the attachments;

4.     The additional information and documentation submitted by e-mail and secure file transfer protocol from Individual Defendants' counsel, Joseph Jay, to Commission counsel dated January 24, 2020, attaching supplements to Individual Defendant's Financial Statement listed above;

5.     The Revised Financial Statement of Individual Defendant signed on January 25, 2020, including the attachments;

6.     The additional information, documentation, and financial records listed in Defendants' counsels' letter to Andrea V. Arias, Jamie E. Hine, and Brian C. Berggren of the Division of Privacy and Identity Protection, Bureau of Consumer Protection, Federal Trade Commission, dated May 17, 2020, including the attachments thereto;

7.     Corporate Defendant's sworn testimony during the Fed. R. Civ. P. 30(b)(6) deposition of Corporate Defendant in this case, the documents that Corporate Defendant produced to Plaintiff on the date of that deposition, Individual Defendant's sworn testimony during his deposition in this case; and

8.     The additional information, documentation, and financial records Defendants provided to Plaintiff between October 25, 2021 and November 2, 2021.

J.      The suspension of the judgment will be lifted as to Corporate Defendant if upon motion by the Plaintiff, the Court finds that any Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the deposition testimony, produced documents, or sworn statements and related documents identified in the paragraph above.  If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection VII.A above, which the parties stipulate, for the purposes of this Section only, represents the consumer injury determined by the Court in the Order at ECF No. 179, less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## VIII.  ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint shall be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendants acknowledge that their Taxpayer Identification Number (Social Security Numbers or Employer Identification Number), which Defendants must submit to the Plaintiff, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.     All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Section.

F.     Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the Commission.   If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within fourteen (14) days.

## IX.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide within fourteen (14) days of the entry of the Order, in a sortable format such as an Excel spreadsheet or its equivalent, the following MyLife customer information for the period from November 1, 2016 to October 31,

2021: first and last name, telephone number, email address, mailing address, subscription type, subscription duration, total paid, refund/chargebacks (if applicable), and a unique customer ID sufficient to identify multiple subscriptions for the same customer; and

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the advertising, marketing, promoting, offering for sale, or selling Covered Records or Covered Information.  Provided, however, that Defendants may use customer information for any current customer if Defendants comply with Sections I through VI of this Order.

## X.     <u>ORDER ACKNOWLEDGMENTS</u>

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within seven (7) days of entry of this Order, must submit to Plaintiff and the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For twenty (20) years after entry of this Order, Individual Defendant for any business that Individual Defendant, individually or collectively with Corporate Defendant, is the majority owner or controls directly or indirectly, and Corporate Defendant must deliver a copy of this Order to:  (1) all of each such business's principals, officers, directors, and LLC managers and members; (2) all of each such business's employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; (3) any business entity resulting from any change in structure as set forth in Section XI titled Compliance Reporting; and (4) any third party from whom any Defendant obtains Covered Information.

Delivery must occur within seven (7) days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XI.     COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact that representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including but not limited to a description of any products or services that involve Covered Information, and the involvement of any other Defendant; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Individual Defendant must:  (a) identify all of his telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all businesses in which he has involvement or an interest, including any business for which the Individual Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail the Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority,

- 22 -

1   control, and any ownership.

2       B.      For twenty (20) years after entry of this Order, each Defendant must

3   submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days

4   of any change in the following:

5           1.      Each Defendant must report any change in:  (a) any designated

6   point of contact; or (b) the structure of any Corporate Defendant or any entity that

7   Defendant has any ownership interest in or controls directly or indirectly that may

8   affect compliance obligations arising under this Order, including:  creation, merger,

9   sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in

10  any acts or practices subject to this Order.

11          2.      Additionally, Individual Defendant must report any change in:  (a)

12  name, including aliases or fictitious name, or residence address; or (b) title or role in

13  any business activity, including any business for which Individual Defendant performs

14  services whether as an employee or otherwise and any entity in which Individual

15  Defendant has any ownership interest, and identify the name, physical address, and

16  any Internet address of the business or entity.

17      C.      Each Defendant must submit to the Commission notice of the filing of

18  any bankruptcy petition, insolvency proceeding, or similar proceeding by or against

19  such Defendant within fourteen (14) days of its filing.

20      D.      One year after entry of this Order, and each year thereafter for a period

21  of twenty (20) years from entry of this Order, each Defendant must submit to the

22  Commission all documentation required under Subsection II.C of this Order.

23      E.      Any submission to the Commission required by this Order to be sworn

24  under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746,

25  such as by concluding:  "I declare under penalty of perjury under the laws of the

26  United States of America that the foregoing is true and correct.  Executed on:  _____"

27  and supplying the date, signatory's full name, title (if applicable), and signature.

28      F.      Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "United States v. MyLife.com, Inc. and Jeffrey Tinsley."

## XII.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for twenty (20) years after entry of the Order, and retain each such record for five (5) years. Specifically, Defendants must create and retain the following records:

A.    Accounting records showing the revenues generated from all products or services sold, and the disbursement of such revenues;

B.    Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Customer files containing the names, addresses, telephone numbers, dollar amounts paid, quantity of products or services purchased, and description of products or services purchased, to the extent such information is obtained in the ordinary course of business;

D.    Records of all complaints and refund requests concerning the subject matter of the Order, whether received directly or indirectly, such as through a third party, and any response to those complaints or requests;

E.    All sales or customer service scripts, form letters or emails, advertisements, or other marketing materials;

F.    All employee manuals and training materials concerning the subject matter of the Order;

G.    All records necessary to demonstrate full compliance with each Section of this Order.

## XIII.  ANNUAL CERTIFICATIONS

IT IS FURTHER ORDERED that:

A.    One year after the issuance date of this Order, and each year thereafter, for any Covered Business that Individual Defendant is a majority owner or controls, directly or indirectly, Individual Defendant must provide the Commission with a certification that: (1) the Covered Business has established, implemented, and maintained the requirements of this Order; and (2) Individual Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission.   The certification must be based on the personal knowledge of the Individual Defendant, or subject-matter experts upon whom the Individual Defendant relies in making the representation.

B.    One year after issuance date of this Order, and each year thereafter, Corporate Defendant must provide the Commission with a certification from a senior officer or manager that:  (1) Corporate Defendant has established, implemented, and maintained the requirements of this Order; and (2) Corporate Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission.  The certification must be based on the personal knowledge of the senior officer or manager, or subject-matter experts upon whom the senior corporate manager or senior officer reasonably relies in making the certification.

C.    Unless otherwise directed by a Commission representative in writing, submit all annual certifications to the Commission pursuant to this Order via email to DEBrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "United States v. MyLife.com, Inc. and Jeffrey Tinsley."

## XIV.  COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order:

A.     Within fourteen (14) days of receipt of a written request from a representative of the Commission or Plaintiff, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including remote video or telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with each Defendant.  Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.     The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XV.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED** this 15th day of December, 2021.

Hon. John F. Walter

UNITED STATES DISTRICT JUDGE

- 26 -